

WENDELEN I. LIPP
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

In re:                                     *

                                           *    Case No.      17-22544

Anita K. Warren,                           *    Chapter        7

                                           *

                                           *

                            Debtor.        *

## MEMORANDUM OPINION

Before the Court are the Order Requiring Matthew August LeFande, Esq. to Show Cause why Sanctions Should not be Imposed for his Failure to Comply with Fed. R. Bankr. P. 9011(b), Mr. LeFande's response thereto, the response filed by District Title, a subsequent Order requiring Mr. LeFande to Show Cause for his failure to attend a hearing held on February 25, 2019, and the responses thereto.  The Court held a hearing to consider the two Show Cause Orders and related filings on April 8, 2019, at which the Court took all matters under advisement.  For the following reasons, the Court imposes monetary sanctions against Mr. LeFande, payable to the Court's Registry, and will also require him to attend two ethics courses. The amount of monetary sanctions will be determined after a hearing to be set by separate Order entered contemporaneously herewith.

I. **Findings of Fact**

The following facts are relevant to the issues at hand and are either uncontroverted or are supported by the evidence in this case.[1]  Although the following is a lengthy recitation of events going back to 2014, the Court finds it relevant and necessary to provide a complete picture of Mr. LeFande's course of conduct since that time.

On September 2, 2014, District Title filed a complaint in the Superior Court for the District of Columbia against Anita Warren and her son, Timothy Day, to recover funds mistakenly paid to her by District Title as part of a real estate closing (the "D.C. Lawsuit"). Defendants Warren and Day removed the D.C. Lawsuit to the United States District Court for the District of Columbia (the "District Court") on October 29, 2014.  After the filing of various dispositive motions, summary judgment was ultimately entered in the D.C. Lawsuit on November 13, 2015, against Defendant Warren for breach of contract, and against Defendants Warren and Day for unjust enrichment (the "D.C. Judgment").[2]  The United States Court of Appeals for the District of Columbia Circuit affirmed the D.C. Judgment on May 4, 2016.  *See* Ex. 1 to District Title's Response to Matthew A. LeFande's Response to Order to Show Cause, Docket Entry No. 79.

On March 22, 2016, District Title filed a motion to conduct post-judgment discovery in aid of execution of its judgment in the D.C. Lawsuit.  The post-judgment motion sought to depose Defendant Day and requested authorization to serve a subpoena on Mr. LeFande seeking

---

[1]  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are so adopted.

[2]  A copy of the Memorandum Opinion entered by the District Court on November 13, 2015, was attached as Exhibit 1 to District Title's Opposition to Debtor Anita K. Warren's Motion to Hold David Howard Cox, Brian Wood Thompson and Steven Sushner in Contempt for Violation of the Automatic Stay filed on October 11, 2017 (the "Motion for Contempt").  *See* Docket Entry No. 18.

both documents and testimony from Mr. LeFande based on his involvement in an alleged

fraudulent conveyance of property owned by Defendant Day.  Mr. LeFande moved for a

protective order regarding his examination based on the attorney-client privilege and his Fifth

Amendment privilege.  In a Memorandum Opinion and Order entered on June 2, 2017, the

District Court denied Mr. LeFande's Request for Protective Order holding that his assertions of

privilege were premature and would need to be asserted on a question-by-question basis.[3]  On

June 16, 2017, Mr. LeFande filed objections to the June 2, 2017 Memorandum Opinion and

Order and renewed his request for a protective order.  Mr. LeFande's objections to the June 2,

2017 Memorandum Opinion and Order were overruled by a Memorandum Opinion and Order

entered by the District Court on July 14, 2017.[4]

       At a status hearing held on September 15, 2017, the District Court scheduled Mr.

LeFande's deposition for September 21, 2017, in Courtroom 4 of the United States Courthouse.

On September 18, 2017, three days before his scheduled deposition, the attorney representing

Mr. LeFande in the D.C. Lawsuit filed a Motion to Dismiss Day from the D.C. Lawsuit because

Defendant Day had passed away earlier in 2017 (the "Motion to Dismiss").  The Motion to

Dismiss argued that District Title failed to take steps to substitute Defendant Day's estate as a

party defendant in the D.C. Lawsuit within 90 days, therefore, Fed. R. Civ. P. 25(a) required that

Defendant Day be dismissed from the litigation.  In a Minute Order entered on September 18,

2017, in response to the Motion to Dismiss (the "Minute Order"), the District Court stated that

---

[3]  A copy of the District Court's Memorandum Opinion and Order denying Mr. LeFande's request for a protective order was attached as Exhibit 6 to District Title's Opposition to the Motion for Contempt.  *See* Docket Entry No. 18.

[4]  A copy of the Memorandum Opinion and Order overruling Mr. LeFande's objections was attached as Exhibit 9 to District Title's Opposition to the Motion for Contempt.  *See* Docket Entry No. 18.

District Title shall respond to the Motion to Dismiss in the time required by the Court's local rules and the Court will rule on the Motion to Dismiss in due course. Nevertheless, due to the ongoing post-judgment discovery efforts related to Defendants Day and Warren, and the fact that Defendant Warren was "still a proper defendant in this case," the Court determined that the Order entered on September 15, 2017, remained in effect and Mr. LeFande was required to appear for his scheduled deposition on September 21, 2017.[5] The Minute Order further provided that Mr. LeFande could not use the pendency of the Motion to Dismiss as a basis to refuse to answer questions about Defendant Day or the Defendants' assets.

On September 19, 2017 – one day after filing the Motion to Dismiss – Defendant Warren (through Mr. LeFande) filed a Chapter 7 Voluntary Petition in this Court thereby commencing the above-captioned bankruptcy case. The "Disclosure of Compensation of Attorney for Debtor" filed by Mr. LeFande in this case indicates that he received $0.00 for legal services rendered to the Debtor in connection with the Debtor's bankruptcy filing. The Debtor's bankruptcy schedules, which were filed with her Petition, reflect that she owns no real property, has no secured debt, and has $314,888.44 in unsecured debt, $312,208.44 of which is attributable to District Title's judgments against the Debtor that have since been deemed nondischargeable. The Debtor's Schedules I and J reflect that she has monthly income of $903.00 available to pay her creditors after payment of her expenses.

By Order entered September 20, 2017 (the "September 20th Order"), one day after the bankruptcy filing, the District Court recognized that Mr. LeFande had filed a suggestion of bankruptcy as to Defendant Warren in the D.C. Lawsuit and stated: "The filing of the bankruptcy

---

[5] A copy of the Minute Order entered on September 18, 2017, was attached as Exhibit 16 to District Title's Opposition to the Motion for Contempt. *See* Docket Entry No. 18.

operates as an automatic stay of any attempt to enforce the judgment against Defendant Warren."[6]  The District Court further stated that because the circumstances underlying the Minute Order have changed "in light of LeFande's actions," the District Court was compelled to resolve the Motion to Dismiss Defendant Day notwithstanding the fact that District Title had not had an opportunity to respond.  The District Court determined that "because the motion lacks merit, the motion to dismiss will be denied, and LeFande remains subject to court orders to attend the deposition scheduled for tomorrow at 1:00 p.m."  Relying on controlling case law from the United States Court of Appeals for the District of Columbia Circuit and provisions of the D.C. Code, the District Court analyzed and rejected the arguments in the Motion to Dismiss, including Mr. LeFande's assertions that District Title's failure to timely substitute Defendant Day's estate as a defendant in the D.C. Lawsuit mandated that Defendant Day be dismissed from the suit and that District Title was prohibited from proceeding against a deceased person in execution of a judgment.  Lastly, the District Court ordered that "all attempts to execute the judgment against defendant Warren are STAYED pursuant to 11 U.S.C. § 362(a), unless plaintiff is granted relief from the bankruptcy court from the automatic stay provision."

Mr. LeFande appeared for his deposition on September 21, 2017, but refused to take the designated seat and to be sworn despite multiple orders to do so by the presiding judge. Consequently, United States Magistrate Judge Deborah A. Robinson entered an Order on September 27, 2017, fining Mr. LeFande $5,000.00 for obstructing the administration of justice (the "Criminal Contempt Order").[7]  That same day, Mr. LeFande filed the Motion for Contempt

---

[6]  A copy of the Order entered on September 20, 2017, was attached as Exhibit 17 to District Title's Opposition to the Motion for Contempt.  *See* Docket Entry No. 18.

[7]  A copy of the Criminal Contempt Order was attached as Exhibit 15 to District Title's Opposition to the Motion for Contempt.  *See* Docket Entry No. 18.  The District Court confirmed the Criminal Contempt

against District Title and its attorneys in this Court in which he asserted the same arguments made in the Motion to Dismiss Defendant Day filed in the D.C. Lawsuit.  This Court held a hearing to consider the Motion for Contempt and District Title's Opposition thereto as well as other related filings on February 21, 2018.  At the conclusion of the hearing, the Court denied the Motion for Contempt and stated its intention to issue an Order to Show Cause to Mr. LeFande for his filing of the Motion for Contempt.  An Order Denying the Motion for Contempt was entered on February 23, 2018.[8]

On March 13, 2018, this Court entered an Order requiring Mr. LeFande to show cause why sanctions should not be imposed for his violation of Federal Rule of Bankruptcy Procedure 9011(b) (the "First Order to Show Cause").  The First Order to Show Cause found that the claims and contentions contained in the Motion for Contempt were frivolous and were presented to harass District Title and to cause unnecessary delay in these proceedings and in proceedings in other courts.  The First Order to Show Cause further found that the legal contentions contained in the Motion for Contempt were expressly rejected by the District Court in the September 20th Order entered one week prior to the filing of the Motion for Contempt.  Lastly, the First Order to Show Cause explained that this Court does not have appellate jurisdiction over orders entered by other federal courts and the same arguments rejected by the District Court could not be relitigated in this Court.

---

Order, which Mr. LeFande then appealed to the United States Court of Appeals for the District of Columbia Circuit.  The Court of Appeals affirmed the Criminal Contempt Order in an Opinion entered on March 26, 2019.  A copy of the March 26, 2019 Opinion was filed with this Court on April 4, 2019.  *See* Docket Entry No. 105.

[8] Mr. LeFande timely appealed the Order Denying the Motion for Contempt to the United States District Court for the District of Maryland.  The United States District Court for the District of Maryland entered a Memorandum Order dismissing Mr. LeFande's appeal for lack of subject matter jurisdiction on December 19, 2018.

Mr. LeFande filed a Response to the First Order to Show Cause on March 27, 2018, and District Title filed a Response on April 9, 2018.  The opening paragraph of Mr. LeFande's Response contained the following soliloquy – typical of the tone of his filings:

> Other than shouting over the attorney's argument at the motion hearing, the Court has done nothing to demonstrate that any of the Debtor's argument is incorrect, let alone unfounded. Respondents Cox, Thompson and Sushner remain in violation of the automatic stay by proceeding in execution of judgment against the sole remaining defendant in the District of Columbia lawsuit, this Debtor.

Mr. LeFande then asserted that there is no authority for this Court to award attorneys' fees to District Title because District Title did not comply with the "safe harbor provision" of Fed. R. Bankr. P. 9011(c) and that an award of attorneys' fees cannot be granted under Fed. R. Bankr. P. 9011(b) when a Court acts *sua sponte*.  As for other types of sanctions, Mr. LeFande argued that any such award would be inappropriate because neither District Title nor this Court rebutted the arguments made in the Motion for Contempt.  Mr. LeFande adamantly maintained that District Title violated the automatic stay of 11 U.S.C. § 362(a) by attempting to execute its judgment in the D.C. Lawsuit after Warren filed her bankruptcy case based on his "demonstration that she is the sole defendant remaining" in the D.C. Lawsuit now that her son passed away.  Quoting *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 933 (7th Cir. 1989), Mr. LeFande stated that: "[t]he Court and the Respondents have offered no authorities to demonstrate that the Debtor's Motion for Contempt is even incorrect, let alone demonstrate that she has 'taken a position [not] reasonable in light of the facts and governing law.'"  Lastly, Mr. LeFande asserted that this Court has exclusive jurisdiction to determine the applicability of the automatic stay and to grant relief from the stay, and that any action taken in violation of the automatic stay is void, including entry of the September 20th Order in which the District Court declined to dismiss Defendant Day from the D.C. Lawsuit and determined that Mr. LeFande remained subject to the

7

court orders requiring him to attend his deposition scheduled for September 21, 2017. Mr. LeFande's Response essentially reiterated the same arguments asserted in the Motion for Contempt for which the First Order to Show Cause was issued.

District Title's Response to Mr. LeFande's Response to the First Order to Show Cause asserted that Mr. LeFande violated Rule 9011(b) and should be subject to both monetary sanctions in the form of attorneys' fees and a monetary fine to deter future violations.

On May 8, 2018, District Title filed a Suggestion of Death stating that it independently learned that the Debtor passed away on or about March 29, 2018.

The Court held a hearing to consider the First Order to Show Cause and related Responses on February 25, 2019 (the "First Show Cause Hearing"). Despite receiving electronic notice of the First Show Cause Hearing, Mr. LeFande failed to appear. The Court issued a second Order to Show Cause against Mr. LeFande on March 7, 2019, directing Mr. LeFande to show cause why he should not be held in contempt for failing to appear at the First Show Cause Hearing and directing Mr. LeFande to appear before the Court at a reconvened hearing on April 8, 2019 (the "Second Order to Show Cause").[9]

On March 21, 2019, Mr. LeFande filed a Response to the Second Order to Show Cause (the "Second Response"). The Second Response stated that Mr. LeFande has "no further part of these proceedings due to his client's death" and that he "lacks standing to advocate on behalf of a dead client." The Second Response asserted that the First Order to Show Cause did not require Mr. LeFande to appear at the First Show Cause Hearing therefore, he did not violate any Court Order. The Second Response challenged the filings by District Title throughout the D.C. Lawsuit and the Debtor's bankruptcy case and maintained that Mr. LeFande rightfully refused to

---

[9] On March 15, 2019, District Title filed a Motion for Fees and Expenses Regarding Show Cause Orders Issued to Matthew LeFande, Esquire, which will be addressed by a separate Order of this Court.

be deposed. District Title filed a Reply to the Second Response to which it attached a copy of

the Opinion issued by the United States Court of Appeals for the District on March 26, 2019,

affirming the Criminal Contempt Order. In that Opinion, the United States Court of Appeals

rejected Mr. LeFande's argument that the District Court lacked subject matter jurisdiction over

the underlying post-judgment discovery proceeding based on Defendant Day's death and

Defendant Warren's bankruptcy filing. In doing so, the Court of Appeals stated that a criminal

contempt charge is "a separate and independent proceeding at law that is not part of the original

action" and can be imposed "even after the action in which the contempt arose has been

terminated." *In re LeFande*, 919 F.3d 554, 561 (D.C. Cir. 2019)(citing *Cooter & Gell v.

Hartmarx Corp.*, 496 U.S. 384, 396 (1990)).

Mr. LeFande appeared at the hearing on April 8, 2019 (the "Second Show Cause

Hearing") along with counsel to District Title. Mr. LeFande initially argued that he had no

standing to appear before this Court because his client had passed away. He then relied on the

Minute Order entered by the District Court on September 18, 2017, which required Mr. LeFande

to appear for his scheduled deposition despite his filing of the Motion to Dismiss Defendant Day

because Defendant Warren was "still a proper defendant in this case." Mr. LeFande argued that

the bankruptcy filing should have stayed the post-judgment discovery in the D.C. Lawsuit

because the Minute Order made clear that District Title was proceeding in execution of judgment

against Defendant Warren. Mr. LeFande then continued to make the same arguments asserted in

the Motion for Contempt and in his responses to the Orders to Show Cause – that Defendant

Day's death precluded post-judgment discovery efforts against Defendant Day and that

Defendant Warren's bankruptcy filing stayed any post-judgment discovery against her. The

Court took all matters under advisement at the conclusion of the Second Show Cause Hearing.

## II. <u>Analysis</u>

Rule 9011(b) provides, in part:

> By presenting to the Court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,–
>
> > (1) it is not being presented for any improper purposes, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011. The imposition of sanctions may be initiated either by motion or by the Court's initiative. *See* Rule 9011(c). If done on the Court's initiative, the Court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing the attorney to show cause why it has not violated subdivision (b) with respect thereto. *Id.* "In assessing conduct alleged to violate the Rule, the court evaluates the attorney's actions under an objective standard of reasonableness, *i.e.,* it considers whether the conduct was 'reasonable under the circumstances.'" *In re Community Mgmt. Corp. of Maryland*, 288 B.R. 104, 108–09 (D. Md. 2002), *aff'd,* 91 F. App'x 808 (4th Cir. 2003). Rule 9011 sanctions are appropriate to address the attempted re-argument of issues already adjudicated. *See McLaughlin v. Bradlee*, 602 F. Supp. 1412, 1417 (D.D.C. 1985)("It is especially appropriate to impose sanctions in situations where

the doctrines of *res judicata* and collateral estoppel plainly preclude relitigation of the suit.").

Once it is determined that an attorney has violated Rule 9011(b), the Court may use its discretion to determine an appropriate sanction. *See In re Alvarado*, 363 B.R. 484, 492 (Bankr. E.D. Va. 2007). Nevertheless, sanctions imposed pursuant to Rule 9011 "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2). "[T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, *if imposed on motion* and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Bankr. P. 9011(c)(2)(*emphasis added*). "In determining the amount of the sanction, a court may consider not only the sanctionable conduct, but also the offending party's ability to pay." *In re Brown*, 319 B.R. 876, 881 (Bankr. N.D. Ill. 2005). Here, the Order to Show Cause was issued on the Court's initiative and not by separate motion filed in compliance with Rule 9011(c)(1)(A). Therefore, an award of attorney's fees to District Title is not available under Rule 9011 for the filing of the Motion for Contempt.[10]

In addition to the sanctioning power afforded by Rule 9011, "a bankruptcy court has statutory authority under section 105(a) as well as its inherent powers to impose sanctions for misconduct." *In re Tabor*, 583 B.R. 155, 159 (Bankr. N.D. Ill. 2018). Courts have inherent power to impose sanctions for bad faith conduct that offends the legal process. *Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*, 606 F. Supp. 2d 617, 620 (E.D. Va. 2008). "If the conduct in question could be adequately sanctioned under the Rules, a court should ordinarily use the rule,

---

[10]  This does not preclude an award of attorney's fees under the Court's inherent power to impose sanctions for misconduct.

but 'if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.'" *Id.* (quoting *Chambers v. NASCO*, 501 U.S. 32, 50 (1991)). Generally, the Court must find that the party acted in bad faith before it invokes its inherent powers to impose sanctions. *Id.*

As found in the First Order to Show Cause, the claims and contentions contained in the Motion for Contempt were frivolous and were presented to harass District Title and to cause unnecessary delay in the bankruptcy case and in pending proceedings in other courts. The legal contentions contained in the Motion for Contempt were expressly rejected by the District Court in the September 20th Order. As set forth at the hearing on February 21, 2018, the Motion for Contempt failed to explain how the automatic stay arising in Ms. Warren's bankruptcy case extended to proceedings against Mr. LeFande pending in the D.C. Lawsuit and failed to make any assertion that District Title attempted to execute on Ms. Warren's assets post-petition. This Court also explained that it does not have appellate jurisdiction over orders entered by other federal courts. If Mr. LeFande was unhappy with the District Court's actions then the proper course of action was to appeal the District Court's Order, not pursue the same claims through the Motion for Contempt filed in Ms. Warren's bankruptcy case.

Neither Mr. LeFande's written responses to the Orders to Show Cause, nor his arguments at the Second Show Cause Hearing convinced this Court that the Motion for Contempt complied with the requirements of Fed. R. Bankr. P. 9011(b). To the contrary, Mr. LeFande's repeated assertions of previously-rejected arguments convinced this Court that not only was the Motion for Contempt filed for improper purposes, but was also knowingly and blatantly misleading. The Motion to Compel conveniently omits why District Title was seeking to examine Mr. LeFande (i.e., to examine his role in alleged fraudulent transfers made by Defendant Day), makes no

reference to Mr. LeFande's numerous failed attempts to avoid examination in the D.C. Lawsuit,

and most egregiously, omits any discussion of the September 20th Order, which denied the

Motion to Dismiss Defendant Day from the D.C. Lawsuit and required Mr. LeFande to appear

for an in-court examination on September 21, 2017.  The September 20th Order was entered one

day after Mr. LeFande filed Ms. Warren's bankruptcy case and several days prior to the filing of

the Motion to Compel, yet the Motion to Compel disregards the detailed findings of fact and

conclusions of law made by the District Court.[11]  Instead, the Motion to Compel alleged that

District Title violated the automatic stay arising in Ms. Warren's bankruptcy case in two ways:

(1) by attempting to depose "Warren's attorney" in execution of its judgment on September 21,

2017, after the filing of the Debtor's bankruptcy case; and (2) by filing a motion in the D.C.

Lawsuit on September 22, 2017, seeking attorney's fees from Mr. LeFande in execution of its

judgment.  The Motion then asserted that the District Court disregarded applicable provisions of

the D.C. Code by permitting execution of District Title's judgment against Defendant Day and

that the District Court's actions in proceeding "in the name of a non-existent co-defendant"

"undermines the entirety of the automatic stay statutory regime of the Bankruptcy Code[.]"

Attached as exhibits to the Motion to Compel were the Suggestion of Death filed in the

D.C. Lawsuit as to Defendant Day; a copy of the pre-petition Minute Order (entered by the

District Court on September 18, 2017); a copy of the Suggestion of Bankruptcy filed in the D.C.

Lawsuit on September 19, 2017 (re: Ms. Warren's bankruptcy filing); and an email dated

September 20, 2017, from Mr. LeFande's attorney in the D.C. Lawsuit advising counsel to

District Title that the automatic stay arising from Ms. Warren's bankruptcy filing prohibits

---

[11] Pages 7-8 of the Motion for Contempt reference specific parts of the District Court's September 20th
Order without providing any context or citation to the actual Order.  This Court was unaware of the
existence of the September 20th Order until District Title filed its Response to the Motion for Contempt.

13

execution of judgment against "the sole remaining defendant in this case" and a demand that District Title cease its "collection proceedings and withdraw your deposition before tomorrow's hearing." As previously noted, the September 20th Order was neither attached to nor mentioned in the Motion to Compel, a significant omission for several reasons. First, the September 20th Order recognized that Ms. Warren had filed for bankruptcy the day before and properly stayed "all attempts to execute the judgment against defendant Warren" unless District Title obtained relief from the automatic stay from this Court. Second, the September 20th Order denied the Motion to Dismiss Defendant Day from the D.C. Lawsuit and in doing so, explicitly determined that the suggestion of death filed in the D.C. Lawsuit as to Defendant Day was insufficient to trigger the 90-day window under Fed. R. Civ. P. 25(a) during which a decedent's successor or representative shall be substituted for a deceased party or the action against the decedent must be dismissed. *See* Fed. R. Civ. P. 25(a). This means that seven days prior to the filing of the Motion to Compel, the District Court had already determined that Mr. LeFande's reliance on Rule 25(a) was incorrect and therefore, Defendant Day remained a party to the D.C. Lawsuit. Despite this ruling, the Motion to Compel repeatedly and falsely asserts that the Debtor was "the only party before the District Court in the District of Columbia." Third, because Defendant Day was not dismissed from the D.C. Lawsuit, the September 20th Order required Mr. LeFande to appear for his deposition on September 21, 2017, thereby authorizing District Title to proceed with the deposition. Again however, the Motion for Contempt ignores these facts and simply says:

> On September 21, 2017, Thompson and Sushner attempted to depose Warren's attorney in execution of the November 13, 2015 judgment. The attorney refused, citing *inter alia*, the automatic stay in this case. The United States District Court magistrate judge found the attorney in contempt and fined him $5,000.

14

The Motion to Compel's failure to address and attach a copy of the September 20th Order was inexcusable and objectively unreasonable.  Mr. LeFande purposefully presented a misleadingly condensed narrative of District Title's actions and of the D.C. Lawsuit.

Mr. LeFande's written responses and oral arguments also failed to provide a reasonable basis to support his argument that he was covered by the automatic stay arising in Ms. Warren's bankruptcy case under the facts of this case.  He repeatedly asserted that District Title was attempting to depose him in execution of the D.C. Judgment against Defendant Warren when in fact, District Title sought to examine Mr. LeFande to uncover *his* knowledge of and potential participation in alleged fraudulent transfers made by Defendant Day.  It is black-letter law that the automatic stay protects only the debtor, "unless the debtor and some third party have such a similarity of interests that failure to protect the third party will mean that the assets of the debtor itself will fall into jeopardy."  *Fox Valley Const. Workers Fringe Ben. Funds v. Pride of the Fox Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998)(citing A.*H. Robins Co. v. Piccinin* (*In re A.H. Robins Co.*), 788 F.2d 994, 999-1001 (4th Cir.1986)).  "The automatic stay does not touch proceedings to enforce a court order against non-bankrupt third parties."  *Id.*  It is also black-letter law that non-bankruptcy courts have concurrent jurisdiction with bankruptcy courts to determine the applicability of the automatic stay with respect to litigation pending before those courts.  *See Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 384 (6th Cir. 2001); *see also In re Baldwin–United Corp. Litig.,* 765 F.2d 343, 347 (2d Cir.1985)("Whether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending and the bankruptcy court[.]"); *Klass v. Klass*, 831 A.2d 1067, 1071 (Md. 2003).  Here, the District Court permissibly and properly determined that any attempts to execute against Ms. Warren were

stayed by her bankruptcy filing. It then allowed proceedings related to Defendant Day and Mr. LeFande to go forward.

Similarly, Mr. LeFande's repeated assertion that he was required to file the Motion for Contempt in this Court because bankruptcy courts have exclusive jurisdiction to remedy violations of the automatic stay confuses the issues and overlooks the preliminary requirement that there be a stay violation for the bankruptcy court to remedy. Mr. LeFande was not a debtor in bankruptcy when he was ordered to appear for an in-court examination in the District Court. His examination was not an attempt to collect a prepetition judgment against the Debtor and he admitted at the hearing on the Motion to Compel that District Title made no attempt to execute on any of Ms. Warren's assets post-petition and in fact, she had no assets that could satisfy the D.C. Judgment. Mr. LeFande's reliance on the Minute Order at the Second Show Cause Hearing to justify the filing of the Motion to Compel was also misplaced. The Minute Order was entered one day before this bankruptcy case was filed and stated that Defendant Warren was still a proper defendant in the case so that post-judgment discovery could proceed regardless of whether Defendant Day was ultimately dismissed as party defendant. Ms. Warren's subsequent bankruptcy filing did not remove her as a defendant from the D.C. Lawsuit. Rather, as clearly stated by the District Court in the *post-petition* September 20th Order, the bankruptcy filing stayed "all attempts to execute the judgment against defendant Warren."

In sum, the Motion for Contempt was filed for improper purposes; contained legal contentions not warranted by existing District of Columbia law and that were explicitly rejected by the District Court; lacked factual support; and was knowingly and egregiously misleading. For these reasons, the Court determines that the filing of the Motion to Compel was objectively unreasonable and sanctions are appropriate under Rule 9011(b) to deter Mr. LeFande's repetition

of the conduct described herein.  *See* Fed. R. Bankr. P. 9011(c).

The Court further finds that Rule 9011 is insufficient to reach the whole of Mr. LeFande's misconduct, much of which took place at hearings and therefore, does not fall under the auspices of Rule 9011.  *See McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*, 111 F.3d 1159, 1172 (4th Cir. 1997).  Therefore, in addition to imposing sanctions under Rule 9011, the Court finds that sanctions against Mr. LeFande are warranted under 28 U.S.C. § 1927[12] and pursuant to the Court's inherent power to regulate litigants' behavior and to sanction a litigant for bad-faith conduct.  *See id.* at 1171 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991)); *see also In re Heck's Properties, Inc.*, 151 B.R. 739, 765 (S.D.W. Va. 1992)("It is well-recognized, however, quite apart from Rule 9011, that courts have the inherent authority to impose sanctions upon counsel who is found to have acted in bad faith, vexatiously, wantonly or for oppressive reasons, and that courts may impose excess costs, expenses and fees, pursuant to 28 U.S.C. § 1927, upon counsel who multiplies the proceedings in an action 'unreasonably and vexatiously.'").  "A bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 if it finds that '[an] attorney's actions are so completely without merit as to require the conclusion

---

[12] 28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.A. § 1927.  "While under 28 U.S.C. § 451, a bankruptcy court is not specifically designated as a 'court of the United States,' bankruptcy courts are a unit of the district court in each judicial district under 28 U.S.C. § 151 and exercise the power of the district court in bankruptcy cases by virtue of the reference provided for by 28 U.S.C. § 157(a)."  *D&B Countryside, L.L.C. v. S.P. Newell (In re D & B Countryside, L.L.C.)*, 217 B.R. 72, 75 n.5 (Bankr. E.D. Va. 1998).  "As such, the bankruptcy court's ability to award sanctions under 28 U.S.C. § 1927 flows from its jurisdictional relationship with the district court."  *In re Ocean 4660 LLC*, 569 B.R. 850, 876 (Bankr. S.D. Fla. 2017).

that they must have been undertaken for some improper purpose such as delay.'" *Matter of Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 230 (2d Cir. 1991)(quoting *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986)).  "Bad faith on the part of the attorney is a precondition to imposing fees under § 1927."  *E.E.O.C. v. Great Steaks, Inc*., 667 F.3d 510, 522 (4th Cir. 2012)). 28 U.S.C. § 1927 is indifferent to the equities of a dispute and instead "focuses on the conduct of the litigation" and "is concerned only with limiting the abuse of court processes."  *Id*. (citing *Roadway Express Inc. v. Piper*, 447 U.S. 752, 762 (1980)).  Without question, Mr. LeFande's actions throughout this bankruptcy proceeding were in bad faith and unreasonably and vexatiously multiplied the litigation between the parties.

Mr. LeFande's actions also violate Rules 19-303.1 and 19-303.3 of the Maryland Attorneys' Rule of Professional Conduct ("MRPC") by which all attorneys practicing before this Court are required to abide,[13] and demonstrate a blatant disregard of several provisions of the Maryland State Bar Association Code of Civility, a copy of which is contained in Appendix E to this Court's Local Rules.  MRPC 19-303.1, entitled "Meritorious Claims and Contentions," provides, in relevant part:

> An attorney shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. An attorney may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

Md. Attorneys' Rules of Prof'l Conduct, Rule 19-303.1.  MRPC 19-303.3, entitled "Candor Toward the Tribunal," provides, in pertinent part:

---

[13] "Because this court is a unit of the United States District Court for the District of Maryland, Maryland's Rules of Professional Conduct apply to lawyers practicing before it."  *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327, 338 (Bankr. D. Md. 2000)(citing Loc. Distr. R. (Md.) 704 (1997)).

(a) An attorney shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the attorney;

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the attorney to be directly adverse to the position of the client and not disclosed by an opposing attorney[.]

Md. Attorneys' Rules of Prof'l Conduct, Rule 19-303.3(a).  Similarly, the fifth, sixth, seventh and eighth duties contained in the Maryland State Bar Association Code of Civility are germane to Mr. LeFande's conduct here, albeit such duties are aspirational.  They provide, in relevant part:

5. We will strive for orderly, efficient, ethical and fair disposition of litigation, as well as disputed matters that are not yet the subject of litigation and for the efficient, ethical, and fair negotiation and consummation of business transactions.

6. We will not engage in conduct that offends the dignity and decorum of judicial and administrative proceedings, bring disorder to the tribunal or undermines the image of the legal profession, nor will we allow clients or witnesses to engage in such conduct.

7. We will not knowingly misrepresent, mischaracterize, or misquote fact or authorities cited.

8. We will be punctual and prepared for all scheduled appearances so that all matters may begin on time and proceed efficiently.

*See* Md. State Bar Ass'n Code of Civility, ¶¶ 5-8.

After reviewing the various Orders and Memoranda issued in connection with the D.C. Lawsuit, this Court has little doubt that the true purpose behind this bankruptcy filing was to protect Mr. LeFande from discovery efforts in the D.C. Lawsuit.  Mr. LeFande received no compensation in connection with this case; the Chapter 7 Trustee issued a Report of No Distribution indicating that the Ms. Warren had no property that the Chapter 7 Trustee could administer on behalf of creditors; and most notably, other than the nondischargeable obligations

19

owed to District Title, which were clearly going to be the subject of a nondischargeability

proceeding, Ms. Warren had minimal debt at the time this case was filed while her monthly

income exceeded her monthly expenses by more than $900.00.  The only logical conclusion from

these facts, combined with Mr. LeFande's numerous attempts to avoid examination, is that this

bankruptcy case was one more attempt by Mr. LeFande to shield himself from questioning.  He

then filed the frivolous Motion for Contempt and continued throughout this case to take positions

contrary to the law and contrary to the rulings made in the D.C. Litigation.  In doing so, he

unnecessarily and vexatiously multiplied these proceedings to the detriment of District Title.  His

conduct, including his failure to appear at the First Show Cause Hearing, offended the dignity

and decorum of the proceedings before this Court and needs to be deterred.  Although the First

Order to Show Cause did not compel Mr. LeFande to appear at a hearing, the First Order to

Show Cause was set for hearing along with Mr. LeFande's response thereto and he was provided

with electronic notice of that hearing.  Attorneys are expected to appear at hearings at which

pleadings they have filed are being considered regardless of whether they are specifically

ordered to appear.  The failure to do so wastes the time and resources of the Court and the other

parties involved.

### III. Conclusion

For these reasons, the Court finds that monetary and nonmonetary sanctions shall be

imposed against Mr. LeFande under Fed. R. Bankr. P. 9011(c), 28 U.S.C. § 1927, and pursuant

to this Court's inherent power to sanction bad faith conduct.  With respect to the nonmonetary

sanctions, Mr. LeFande shall attend two ethical courses within six months of the date of entry of

this Memorandum and shall certify his completion of the required ethical courses by March 9,

2020.  The amount of monetary sanctions will be determined after a hearing on Mr. LeFande's

financial circumstances in order to assess his ability to pay.

An Order consistent with this Memorandum Opinion will be entered contemporaneously

herewith.


cc:  All Parties
     All Counsel
     Office of the United States Trustee



**<u>END OF MEMORANDUM</u>**